

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2008

# New Jersey v. NRC

Precedential or Non-Precedential: Precedential

Docket No. 06-5140

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"New Jersey v. NRC" (2008). *2008 Decisions.* Paper 1090.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1090

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 06-5140, 07-1559, 07-1756

———

STATE OF NEW JERSEY,
                    Petitioner

v.

UNITED STATES NUCLEAR
REGULATORY COMMISSION;
UNITED STATES OF AMERICA,
                    Respondents

———

On Appeal from the
United States Nuclear Regulatory Commission
(NRC-1: NUREG-1757)

———

Argued April 16, 2008

Before: SLOVITER, JORDAN and ALARCÓN[*],
Circuit Judges

(Filed May 21, 2008)

———

Kenneth W. Elwell
Andrew D. Reese     (Argued)
Office of Attorney General of New Jersey
Trenton, N.J.  08625-0000

    Attorneys for Petitioner

---

[*]    Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Joseph J. McGovern (Argued)
Elena B. Zuares
Parker McCay
Marlton, N.J.  08053-0000

      Attorneys for Intervenor Petitioner Gloucester County
      Board

Charles E. Mullins   (Argued)
United States Nuclear Regulatory Commission
Rockville, M.D. 20852-2738

Kathryn Kovacs
United States Department of Justice
Environmental & Natural Resources Division
Washington, D.C. 20026-20000

      Attorneys for Respondents

Matias F. Travieso-Diaz  (Argued)
Pillsbury, Winthrop, Shaw & Pitman
Washington, D.C. 20037-0000

      Attorney for Intervenor Respondents Shieldalloy
      Metallurgical Corporation

____

## OPINION OF THE COURT

____

SLOVITER, <u>Circuit Judge</u>.

     The state of New Jersey petitions this court for review of a guidance document issued by the United States Nuclear Regulatory Commission ("NRC") which proposes a long-term control license for facilities that decommission under restricted release regulations but cannot find adequate institutional controls.  We will dismiss for lack of jurisdiction.

**I.**

A company that holds a license from the NRC approving its use of materials subject to that agency's control and authorization must seek its permission to decommission. It must submit a decommissioning plan to the NRC that describes how it proposes to decommission the facility. The plan must include cost estimates and must set forth the major technical actions needed to safely carry out decommissioning. See 10 C.F.R. §§ 40.42, 50.75. The NRC staff must notify and solicit comments from the public on the adoption of the decommissioning plan because such adoption would amend a license. See 10 C.F.R. § 20.1405.

Once a licensee has satisfactorily demonstrated that it has complied with its approved decommissioning plan, it must ask the NRC to terminate its license either for unrestricted release of the site or for restricted release whereby controls remain in place. A license can be terminated for restricted release only after the licensee has met certain conditions. See 10 C.F.R. § 20.1403(a)-(e). Among those conditions is the provision of "legally enforceable institutional controls" that will protect the public by restricting future land use. Id. § 20.1403(b).

The NRC's License Termination Rule ("LTR"), found in 10 C.F.R. § 20.1401 et seq., sets forth the requirements for decommissioning the licensees' facilities. See Radiological Criteria for License Termination, 62 Fed. Reg. 39,058 (July 21, 1997). At issue in this case is NUREG-1757, an NRC document that provides guidance on how licensees may satisfy those requirements.

Initially, licensees had difficulty in meeting the requirements set forth in the License Termination Rule for a license with restricted conditions. Licensees had particular difficulty in satisfying the institutional control requirement. In June 2002, the NRC directed its staff to analyze these difficulties. Thereafter, based on its analysis, the staff recommended that "for any restricted release site that is unable to establish acceptable institutional controls using other available

3

options," a licensee could satisfy this requirement through a possession-only license for long-term control ("POL/LTC"). App. at 515. The staff analysis explained that this "is the type of institutional control, similar to EPA's orders or permits, that provide the necessary restrictions on access or future land use. NRC would monitor, inspect, and enforce under the license authority." App. at 515.

The NRC approved the staff's recommendations in November 2003, included them in its Draft Supplement 1 to NUREG-1757 issued in September 2005, and sought public comments on the restricted release/institutional controls issues. See Updates to Implement the License Termination Rule Analysis, 70 Fed. Reg. 56,940 (Sept. 29, 2005). It received twelve public comments, including comments from New Jersey. In September 2006, the NRC approved revising NUREG-1757 to include the POL/LTC option. The NRC posted the revised version of NUREG-1757 on its website on October 27, 2006, and formally announced its availability on December 28, 2006. See Consolidated Decommissioning Guidance, 71 Fed. Reg. 78,234 (Dec. 28, 2006).

Shieldalloy Metallurgical Corporation ("Shieldalloy"), the licensee involved in this appeal, had filed two decommissioning plans that were rejected by the NRC for lack of sufficient information. Thereafter, it revised its decommissioning plan which included the POL/LTC option. The NRC staff accepted Shieldalloy's revised plan in October 2006 "for the purpose of initiating the technical review of the plan that will eventually produce both a safety evaluation report (SER) and an environmental impact statement (EIS)." In re Shieldalloy Metallurgical Corp., 65 N.R.C. 341, 344 (2007). On November 17, 2006, the NRC issued a Notice of Opportunity for a Hearing. See Notice of Consideration of Amendment Request for Decommissioning for Shieldalloy, 71 Fed. Reg. 66,986 (Nov. 17, 2006). There were seven requests for hearings, including those from New Jersey and Gloucester County, New Jersey. See Shieldalloy, 65 N.R.C. at 343. The Atomic Safety and Licensing Board ("ASLB") granted only New Jersey's request for a hearing, although Gloucester County was entitled to participate as a non-party. Id. at 343. New Jersey's seventeen contentions

before the ASLB challenge both the technical analyses in Shieldalloy's decommissioning plan and the legality of the NRC's decommissioning regulations, including the POL/LTC proposed in NUREG-1757. Id. at 353-54.

On December 22, 2006, New Jersey filed a petition for review in this court.[1] It also filed with the NRC a petition for rulemaking and a request for a hearing on NUREG-1757. The petition for rulemaking was adjourned by the NRC until rulings by this court and the ASLB. The NRC denied the request for a hearing on January 12, 2007. New Jersey has filed a second petition for review of that ruling. On January 31, 2007, the NRC filed a motion to dismiss New Jersey's petitions for jurisdictional reasons.

## II.

The Administrative Orders Review Act, better known as the Hobbs Act, 28 U.S.C. §§ 2341-2351, gives courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Atomic Energy Commission [now the NRC] made reviewable by section 2239 of title 42." 28 U.S.C. § 2342(4). The statutory provision incorporated, which is in the Atomic Energy Act, applies to any proceeding "for the granting, suspending, revoking, or amending of any license . . . [and] for the issuance or modification of rules and regulations dealing with the activities of licensees . . . ." 42 U.S.C. § 2239(a)(1)(A). It subjects to judicial review "[a]ny final order entered in any [NRC] proceeding of the kind specified in subsection (a)." Id. § 2239(b)(1).

The NRC argues that NUREG-1757 is a non-binding guidance document, and not a "final order." Generally, "two

_____

[1] New Jersey filed an identical petition for review on February 23, 2007, in the event this court were to determine that the time for appeal was triggered by the December 28, 2006 Federal Register notice formally announcing the availability of the revised NUREG-1757, rather than the October 27, 2006 NRC website publication of the revised NUREG-1757.

conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process–it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997) (internal citations omitted). An action does not constitute final agency action if it has "no direct consequences' and serve[s] 'more like a tentative recommendation than a final and binding determination.'" <u>Id.</u> at 178 (citation omitted).

NUREG-1757 is not a final order because it is not binding and does not determine any rights or obligations or have legal consequences. It is not a rule or regulation. In fact, NUREG-1757 explicitly disclaims any legal effect. It provides:

> Legally binding regulatory requirements are stated only in laws; NRC regulations; licenses, including technical specifications; or orders, not in NUREG-series publications.

App. at 66.

. . .

> This NUREG is not a substitute for NRC regulations, and compliance with it is not required. The NUREG describes approaches that are acceptable to NRC staff. However, methods and solutions different than those in this NUREG will be acceptable, if they provide a basis for concluding that the decommissioning acts are in compliance with NRC regulations.

App. at 73 (<u>available at</u> http://www.nrc.gov/reading-rm/doc-collections/nuregs/staff/sr1757/v1/sr1757v1r2.pdf).

Thus, a licensee is under no obligation to follow the guidance, and the NRC is also not required to grant a proposed license merely because a decommissioning plan follows the guidance in NUREG-1757. Instead, as is happening in the Shieldalloy administrative action, any interested party may argue

that a decommissioning plan in accordance with NUREG-1757 does not comply with the applicable regulatory requirements. Moreover, as demonstrated by the NRC staff's retraction of one portion of NUREG-1757 based on experience applying it to Shieldalloy's decommissioning plan, NUREG-1757 can be modified at any time. See Consolidated Decommissioning Guidance, 72 Fed. Reg. 46,102 (Aug. 16, 2007) (describing development of guidance as "an iterative process").

New Jersey argues that NUREG-1757 is a final order based on this court's decision in Limerick Ecology Action, Inc. v. NRC, 869 F.2d 719, 734 (3d Cir. 1989), where we stated that "[t]he agency's label of an agency action, although one factor to be considered, does not control whether the action is in fact a rulemaking. Instead, 'it is the substance of what the [agency] has purported to do and has done which is decisive.'" (internal citations omitted). In Limerick, we considered three factors to determine whether an NRC action was a substantive rule or policy statement: whether the action was intended to be (1) finally determinative of the issues; (2) not subject to challenge in individual licensing proceedings; and (3) subject to notice and comment. Id. at 734-35. In reviewing the final order in that case that issued an operating license, we held that a policy statement upon which the NRC had relied "should not be accorded the stature of a rule," id. at 735, for even though it "more closely approximates a substantive rule than a policy statement," id., the NRC had described it as a non-binding policy statement and "it is contrary to the intent of the APA to force the public to divine the obfuscated intention of the NRC," id. at 736.

We note that the first Limerick factor is not met here. NUREG-1757 does not "determine" the rights of any party but rather guides licensees regarding ways to obtain NRC approval of certain actions with respect to decommissioning. Moreover, the NRC has characterized NUREGs and other NRC guidance documents as "routine agency policy pronouncements that do not carry the binding effect of regulations. Such guidance documents merely constitute NRC Staff advice on one or more possible methods licensees may use to meet particular regulatory requirements. These guides, however, do not themselves have the force of regulations for they do not impose any additional

7

legal requirements upon licensees.  Licensees remain free to use other means to accomplish the same regulatory objectives."  In re Int'l Uranium Corp., 51 N.R.C. 9, 19 (2000) (internal citations omitted).  Although NUREG-1757 was submitted for public notice and comment, that was done in this case as a matter of agency discretion.

### III.

New Jersey also argues that the NRC's failure to conduct a required Environmental Impact Statement ("EIS") for the revised NUREG-1757 gives us jurisdiction pursuant to Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 n.7 (1992).  Under the National Environmental Policy Act ("NEPA"), all federal agencies are required to prepare an EIS for any proposed major federal action "significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  One categorical exclusion from the NEPA requirement covers "[i]ssuance or amendment of guides for the implementation of regulations in this chapter, and issuance or amendment of other informational and procedural documents that do not impose any legal requirements."  10 C.F.R. § 51.22(c)(16).  Because NUREG-1757 is not a binding document but a guide without legal obligations, it is covered by this exclusion.

New Jersey acknowledges that the NRC will conduct site-specific environmental analyses when licensees decommission in accordance with NUREG-1757.  Nonetheless, it argues that the NRC was required to evaluate the cumulative impact of all potential licensing facilities that may opt for the POL/LTC proposed in NUREG-1757 rather than be permitted to "segment[] the LTC license program into individual sites."  N.J. Br. at 53.  This is not the time to consider New Jersey's concept of "cumulative impact."  See Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 180 (3d Cir. 2000).  Only Shieldalloy has applied for a POL/LTC, and NEPA does not require a comprehensive impact statement covering merely contemplated projects.  Because New Jersey argues that the NRC should have conducted an EIS in conjunction with its issuance of NUREG-1757, and we have held that we have no jurisdiction over that challenge at this time, we have no independent jurisdiction to

review its challenge to the failure to conduct an EIS.[2]

## IV.

For the above-stated reasons, we will dismiss New Jersey's petitions for review for lack of jurisdiction.

*New Jersey v. NRC*, Nos. 06-5140, 07-1559, 07-1756,
*JORDAN, Circuit Judge*, *concurring*

I join Parts I, II, and IV of the majority opinion. I also agree whole-heartedly with the conclusion in Part III that we lack jurisdiction to consider New Jersey's argument that the Nuclear Regulatory Commission ("NRC") was required under the National Environmental Policy Act ("NEPA") to issue an Environmental Impact Statement with NUREG-1757. If Part III were confined to an expression and explanation of that conclusion, I would have no occasion to write separately. Unfortunately, however, the majority goes on in Part III to address the merits of New Jersey's argument. It reviews a NEPA exclusion in an NRC regulation and opines that, "[b]ecause NUREG-1757 is not a binding document but a guide without legal obligations, it is covered by [that] exclusion." Regardless of whether that is a sound interpretation and application of the regulation, I feel compelled to concur, rather than join Part III, since I am persuaded that we ought not opine on the merits of a matter that we have no jurisdiction to consider.

---

[2] We also lack jurisdiction over New Jersey's petition for review of the NRC's denial of New Jersey's request for a hearing to rescind portions of NUREG-1757, because that NUREG was not entered in a proceeding for the issuance of a license or rule, which is a prerequisite for jurisdiction under the Hobbs Act. See 28 U.S.C. § 2342(4); 42 U.S.C. § 2239(a)(1)(A), (b)(1).